ELI RAICHER, Appellant, v. NATIONAL BANK OF COMMERCE IN ST. LOUIS, Respondent.*

St. Louis Court of Appeals. Opinion Filed January 3, 1925.

1. **BANKS AND BANKING:** Foreign Exchange: Russian Rubles: Instructions: Instruction Not Erroneous as Not Being Within Pleadings and Evidence. In an action against a bank seeking to recover certain sums of money paid the bank for rubles to be transmitted to Russia, but which were not delivered, an instruction authorizing the jury to find that the bank agreed on two different occasions that if the rubles were not delivered it would return the money, *held,* that while the evidence was scant as to a promise by the

*(1) Appeal & Error, 4 C. J., Section 3014;

Raicher v. Nat. Bank of Commerce.

bank on one of the occasions, yet under the facts of the case the instruction did not work reversible error.

2. ———: ———: ———: Consideration: Promise Based on Past Consideration: Void. Where money was paid to a bank to be invested in rubles, the rubles to be transmitted to Russia, and the bank failing to deliver them later surrendered the receipt and issued a new one, a promise by the bank at such time to turn United States money back to plaintiff in the event the rubles could not be delivered, was based on a past consideration, and. is *nudum pactum* and void.

3. EVIDENCE: Parol Evidence: Inadmissible to Modify Receipt Containing Contractual Provision. Where a receipt given by a bank in return for money paid it to be invested in rubles and transmitted to Russia recited that remittances were accepted without responsibility of the bank and subject to delays resulting from war, such receipt embodies contractual provisions, and, if so, such contract cannot be modified or enlarged by parol testimony.

4. BANKS AND BANKING: Foreign Exchange: Receipt Reciting Remittance Subject to War Conditions: Bank's Liability Stated. Where a bank received United States money for transmission of foreign exchange to a foreign country, and the receipt of the bank recites that the remittance of the bank is subject to war conditions, and if such remittance and delivery cannot be made through the foreign postal service, because of war conditions, the bank is liable only for the return of the foreign money, or its value, to the purchaser, and is not liable for the original amount that was paid in United States money.

(2) ·Contracts, 13 C. J., Section 220; (3) Evidence, 22 C. J., Section 1522; (4) Banks & Banking, 7 C. J., Section 233 (1926 Anno).

Appeal from the Circuit Court of the City of St. Louis.— *Hon. H. A. Hamilton,* Judge.

AFFIRMED.

*Adolph Abbey* for appellant.

(1) Instructions must be within the purview both of the pleadings and the evidence. Degonia v. Railroad, 224 Mo. 589; Waddingham v. Hulett, 92 Mo. 528; Mansur v. Botts, 80 Mo. 658; Bank v. Murdock, 62 Mo. 70; Mc-

Atee v. Valandingham, 75 Mo. App. 45. (2) An instruction not based on the evidence is erroneous and should not be given. Evans v. Graden, 125 Mo. 72; Hahn v. Cotton, 136 Mo. 216; Smith v. City of Sedalia, 152 Mo. 283; Fleming v. St. Louis and S. R. Co., 101 Mo. App. 217. (3) Judgment will be reversed for an instruction not warranted by the evidence which was prejudicial to the party or calculated to mislead the jury. Turner v. Baker, 42 Mo. 13; Franz v. Hilterbrand, 45 Mo. 121; Washington Mut. Fire Ins. Co. v. St. Mary Seminary, 52 Mo. 480; Bowles v. Lewis, 58 Mo. App. 649. (4) Appellant is entitled to recover upon the evidence for failure of consideration. Shepherd v. Jenkins, 73 Mo. 510. (5) In the construction of a contract its words must be given their common, ordinary and usual meaning and when free from ambiguity there is no reason for construction. Frye v. Shepherd, 173 Mo. App. 207; Johnson v. Dalrymple, 140 Mo. App. 232; County of Johnson v. Wood, 84 Mo. 509. (6) It is a basic rule of evidence that facts not logically relevant to the issues are not admissible. 22 C. J. 158, cases cited. (7) Where a particular description in a contract follows a general description the particular one will govern. Moore v. Wood, 173 Mo. App. 578; Meyers v. Wood, 173 Mo. App. 564; Hoffman v. Eastern Wisconsin R. Co., 134 Wis. 607; Hawkins v. Great Western R. Co., 17 Mich. 57; Johnson County v. Wood, 84 Mo. 489. (8) "Delay" as used in a contract exempting from all liability for any delay in the performance of the contract does not exempt one from liability for a total failure of performance. Baldwin v. United States Tel. Co. (N. Y.), 54 Barb. 505, 6 Ab. Proc. (N. S.) 405. '

*D'Arcy & Neun* for respondent.

(1) The promise which the bank is alleged to have made to appellant on November 21, 1917, is *nudum pactum* and void, because based on a past consideration. Riley v. Stevenson, 118 Mo. App. 187; 13 C. J. 359, Note 7; 13 S. J. 724, Note 6. (2) Plaintiff must plead a con-

sideration, and he must prove the consideration as pleaded or his suit fails. Walker v. Bohannan, 243 Mo. 119, 147 S. W. 1024, 1029; Dunlap v. Kelly, 105 Mo. App. 1; 13 C. J. 722, note 91; 13 C. J. 723, notes 96 and 97. (3) The pleadings are the foundation of the action and the point decided must be in substance and effect within the issues. State ex rel. v. Muench, 217 Mo. 124, 137, 138; Charles v. White, 214 Mo. 187, 206; Hope v. Blair, 105 Mo. 85, 93. (4) In a case exactly like the one at bar, this court held that the bank was not liable unconditionally for failure to deliver in a foreign country the funds called for in the receipt, but that the bank's only duty was to take reasonable and ordinary steps to endeavor to effect the delivery. Kurtzeborn v. Liberty Bank, 253 S. W. 103; Strohmeyer & Arpe Co. v. Guaranty Trust Co., 157 N. Y. Supp. 955; Fliker v. State Bank, 159 N. Y. Supp. 730; Calfand v. State Bank, 172 N. Y. Supp. 99. (5) A receipt which embodies contractual provisions like the one given by the bank in this case is a contract which cannot be altered or enlarged by parol testimony. Interurban Cons. Co. v. Hayes, 191 Mo. 248; Carpenter v. Jamison, 6 Mo. App. 216, 75 Mo. 285; Blakely v. Benecke, 59 Mo. 193; 22 C. J. 1138, note 32. (6) Parol evidence is not admissible which seeks to nullify, modify or change the character of a written obligation. Stimson v. Brinkman (Mo. App.), 190 S. W. 646; Bank v. Reichert, 101 Mo. App. 242; 22 C. J. 1151, note 4. (7) The modern practice, which admits as witnesses the parties directly interested, makes a strict adherence to the rule excluding parol testimony still more urgent than formerly. 22 C. J. 1074, notes 37 and 38; Tracy v. Union Iron Works Co., 104 Mo. 193; Wodock v. Robinson, 148 Pa. 503, 506. (8) The Supreme Court of the United States has held that a contract with a national bank which is beyond its powers, or *ultra vires,* though it may not be otherwise illegal, is absolutely void on the ground that such bank, by reason of its limited powers, is incapable of making such a contract; that the fact that the contract has been executed by one of the parties, and the

other has thus received the consideration for his or its promise, cannot give the contract any validity; that such performance by one of the parties and receipt of the consideration by the other does not estop the latter from setting up that the contract is *ultra vires,* since all persons are chargeable with knowledge of the powers of a corporation; and that no action, therefore, will lie on the contract itself by the party on whose part it has been executed. 3 Fletch. Cyc. Corp., p. 2601, notes 84 and 85; California Bank v. Kennedy, 167 U. S. 367; Louisville N. A. & C. R. Co. v. Louisville Trust Co., 174 U. S. 552, 43 L. Ed. 108; Pearce v. Madison, etc., Co., 21 How. 441, 16 L. Ed. 184; Bowen v. Needles Nat. Bank, 94 Fed. 925; Central Trans. Co. v. Pullman's Palace Car Co., 139 U. S. 24, 35 L. Ed. 55; Pittsburg C. & St. L. R. Co. v. Keokuk & H. Bridge Co., 131 U. S. 371, 33 L. Ed. 157. (9) The above rule has been followed in Missouri. 3 Fletch. Cyc., p. 2606, note 4; Richard Hanlon Mill Co. v. Miss. Valley Trust Co., 251 Mo. 553. (10) The state courts are governed by the federal rules relating to the effect of *ultra vires* in actions by or against corporations created under Federal statutes. 3 Fletch. Cyc., p. 2600, note 80; First National Bank v. American Nat'l Bank, 173 Mo. 153 (see quotations on p. 1½), 72 S. W. 1059; Appleton v. Citizens Central Bank, 190 N. Y. 419-420. (11) The powers of a national bank under the National Bank Act are essential matters for Federal construction and interpretation and the state courts in construing their powers will be guided by the decisions of the Supreme Court of the United States. First Nat'l Bank v. American National Bank of K. C., 173 Mo. 153. (12) A national bank has the right to plead *ultra vires* as to any contract it may have made when sued thereon by the other party thereto, whether such contract be executed or not. A contract of a national bank which is *ultra vires,* that is to say, outside the object of its creation as defined in the law of its organization, is not only voidable, but wholly void, and cannot be ratified by either party. First Nat'l Bank v. American Nat'l Bank of K. C., 173 Mo. 153.

(13)   A national bank has no power, either with or without consideration, to agree to bind itself that a draft drawn by a customer of another national bank on one of its own customers will be paid.   Such an agreement is a mere guarantee and is not within the powers conferred on national banks, and when sued upon such contract the bank can successfully interpose a defense of *ultra vires*. First Nat'l Bank v. American Nat'l Bank of K. C., 173 Mo. 153.   (14)   A bank is not authorized to become a guarantor.   (Bank notes of A to B, proceeds of note going to bank to pay A's debt to it, held *ultra vires*.)   7 C. J. 595, note 90; Bacon v. Farmers Bank, 79 Mo. App. 406.

DAUES, J.—Plaintiff, appellant here, seeks to recover certain sums of money paid by him to the respondent bank for three thousand rubles to be transmitted to Russia.   There was a verdict and judgment for defendant on both counts of the petition.   Plaintiff appeals.

The trial petition alleges that defendant bank on November 21, 1917, in consideration of $234.25 in United States currency paid to the bank by plaintiff, agreed to remit to Mrs. Raicher at Shumsk, Russia, one thousand rubles, and that if not so delivered the defendant would refund to plaintiff the sum of $234.25 so paid over to it; that defendant failed to perform said agreement and has refused to return to plaintiff said $234.25, or any part thereof.

The second count is exactly as the first, except that it is alleged that $445 was deposited with the bank, on July 19, 1917, for two thousand rubles under the same circumstances as alleged in the first count.

Defendant's answer admits that the money was paid by plaintiff for the purchase of the rubles, but alleges that the remittances, as evidenced by a receipt, were taken without any responsibility of the bank for the delivery of the rubles in Russia;   that the money was taken at the exchange value of the rubles and a money

order for the payment of said rubles was sent to Russia, to be delivered there by a correspondent, but that delivery was prevented because of the existence of the war, and that defendant has never been able to learn whether the thousand rubles represented in the first count were ever delivered in Russia. As to the rubles represented in the second count, defendant says it was informed by its Russian correspondent that no delivery could be made to the person named in the order; that defendant offered to return the rubles to plaintiff, or pay him the then value of same in legal tender of the United States, but that plaintiff refused to accept either the rubles or their value in our money; that defendant then held the rubles subject to plaintiff's order and at his risk, and that while so holding same for plaintiff the rubles became totally valueless. The answer further denies that the bank ever made any promise to plaintiff that if the rubles could not be delivered in Russia, defendant would refund to plaintiff the United States currency paid for said rubles.

Plaintiff sought by motion to strike out parts of defendant's answer, which motion goes to the very essence of the entire answer. This motion was denied.

The reply is a general denial.

The evidence on the part of plaintiff is that plaintiff on June 20, 1917, paid to the bank $232.75 for a thousand rubles and received a receipt therefor, which receipt we will set out later. Plaintiff says that after repeated inquiries defendant's agents advised him that no delivery had been effected, so that on November 21, 1917, plaintiff paid defendant an additional $1.50 for transmitting further advice, and that on that date the bank cancelled the former order and issued a new receipt for $234.25, and plaintiff states that at that time the bank promised plaintiff that if the rubles were not delivered, plaintiff would get his money back from the bank. On July 19, 1917, plaintiff deposited $445 in said bank, which was to purchase an additional two thousand

rubles, and plaintiff says that on that occasion the bank, through its agent Oppenheimer, again promised him that if the rubles were not delivered in Russia the bank would pay back the money so deposited in the bank for the rubles.

The defendant's evidence, strongly corroborated by witnesses and documentary evidence, is to this effect: Plaintiff deposited the sums as claimed, but that no one for the bank at any time promised that if the rubles were not delivered to the addresses the bank would refund to plaintiff the United States currency so deposited for the rubles; that on June 30, 1917, when the $232 75 was deposited by appellant, a written receipt was given plaintiff, in which it is recited that the money was received to purchase a thousand rubles to be remitted to Nessie Raicher at Wishnowitz, Russia. This receipt contains the words: "All remittances accepted without our responsibility, subject to delays resulting from war." The bank thereupon converted the $232.75 into a thousand rubles and set aside these rubles on its books for plaintiff, and thereupon, by mail, the defendant advised its correspondent in Russia to deliver the thousand rubles to Nessie Raicher and to charge same to the account of defendant bank. The bank in Russia was unable to deliver the rubles because of war conditions. When plaintiff received this information, he came to the bank on November 21, 1917, and asked the bank to make another effort to deliver the rubles. A new receipt for $234.25 was then issued for the rubles. This second order was again sent to Russia, and it has never been learned whether the rubles have been delivered. Plaintiff demanded that the bank pay back the $234.25 in our money. This, the bank refused to do, but did offer and tender plaintiff the thousand rubles which it had bought.

The testimony as to the two thousand rubles bought July 19, 1917, for which plaintiff paid $445, is the same as on the first transaction. The bank produced evidence

to show that the rubles were set aside for plaintiff; a letter of advice was sent to its correspondent in Russia with instructions to deliver the two thousand rubles to Mrs. Raicher, and on this item the correspondent in Russia advised the defendant bank that it was unable to deliver the rubles, whereupon the bank immediately, to-wit on December 6, 1917, notified plaintiff of the situation and offered to return the two thousand rubles or pay him the value in our money which the rubles then bore. Plaintiff refused to take the rubles at their value, but demanded that the bank pay him $445 in United States currency. The rubles in the meantime had declined until at the time of the trial all the rubles involved were of no value whatsoever. A similar receipt was given in this transaction.

We think it more satisfactory to group appellant's assignments of error somewhat in disposing of this appeal. In submitting the case to the jury, the court modified defendant's instruction and gave same as Instruction No. I. The court added the following:

"Unless you further find from the evidence that defendant agreed on June 30, 1917, and on or about November 21, 1917, that if said rubles were not delivered to said Nessie Raicher that defendant would return said $232.75 to plaintiff; and if you find defendant did so agree and that said rubles have not been delivered to said Nessie Raicher, then you will find your verdict for plaintiff for $232.75 with interest at six per cent per annum from the date plaintiff demanded said money."

Plaintiff complains that this instruction is not within the pleadings and the evidence, and particularly contends that by this instruction the jury were required to find that the defendant agreed both on June 30, 1917, and on November 21, 1917, that if the rubles were not delivered to Nessie Raicher, the defendant would return the $232.75 to plaintiff, whereas counsel for plaintiff says there is no evidence that there was any such agreement on June 30, 1917.

The abstract, as supplemented by the respondent,

contains the following questions and answers in plaintiff's examination:

"Q. Now, what else, if anything, did Mr. Oppenheimer say to you on June 30th about delivering the money, or if he didn't deliver it; did you have any conversation relative to that? A. He tell me not to be afraid. He say, 'If I don't deliver the money you get your money back.' I tell him I have asked at the post office and the express company, and that if that office don't deliver you always get your money back.

"Q. Did he tell you the same thing June 30th? A. June 30th he didn't tell me, but he tell me not to be afraid.

"Q. Now, on July 19th or 20th you sent $445. A. Yes, sir; at that time I sent $445."

In appellant's abstract of the record, plaintiff's testimony is as follows: "In November he said the same thing, not to be afraid, 'if we don't deliver, we will give you your money back;'" though it is difficult to determine just what former conversation is referred to by plaintiff's answer. While the evidence is scant as to a promise by the bank on June 30, 1917, to turn United States money back to plaintiff in the event the rubles could not be delivered, yet under the facts of this case, we think the instruction does not work reversible error.

The petition, being the third amended petition, alleges that the bank on June 30, 1917, promised to refund the money to plaintiff if the $232.75 was not delivered. During the progress of the trial, by interlineation, the date was changed from June 30, 1917, to November 21, 1917, so that the petition as it finally stands alleges a **promise by** the bank on November 21, 1917, and the consideration is $234.25. Under the undisputed evidence, the $232.75 was not paid on that date, so there was no consideration from plaintiff to the bank on the November date to support the promise which plaintiff says was made at that time. Raicher bought the thousand rubles for $232.75 and paid this sum to the bank on June 30, 1917. The money was invested for a thousand rubles

for the plaintiff at that time. The bank was unable to make delivery of the rubles. In November, 1917, plaintiff requested that another attempt be made, whereupon the bank surrendered the original receipt and issued to plaintiff a new receipt dated November 21, 1917, and accordingly, if that be so, we must agree that any promise that the bank is claimed to have made to plaintiff on November 21, 1917, is based on a past consideration and is *nudum pactum* and void. Plaintiff did not have this sum of money in November, but same had been invested in rubles in June and the bank was attempting to deliver the rubles bought in June to the addressee in Russia.

Striking directly at the merits of the defense, challenged in several ways by appellant, we refer to the case of Kurtzeborn v. Liberty Bank, 253 S. W. 103. In that case the receipt read as follows:

"St. Louis, Mo., July 10, 1916.

"Received of Mrs. B. Kurtzeborn the sum of $419, to be remitted to Mrs. E. Griesedieck, Wiesbaden."

In that case it was shown that the bank was unable to deliver the money to the addressee in Germany. It was alleged that the bank's cashier had promised to return the money to Mrs. Kurtzeborn if same could not be delivered in Germany. In that case, too, the defense was pleaded, as here, that it was the general custom for the bank to issue receipts of this character to purchase the marks in this country and then transfer the German money to Germany. We held that such receipt, as explained by the custom, was an agreement to remit the marks in the usual and customary way, and was not an agreement to deliver the United States money to the addressee in Germany, and that the person making the deposit here was entitled to recover only the value of the marks purchased by the bank.

In the instant case, however, the receipt recites that remittances were accepted without responsibility of the bank and subject to delays resulting from the war. This receipt, we think, embodies contractual provisions, and,

if so, such contract cannot be modified or enlarged by parole testimony. [Eggimann v. Houck, 240 S. W. 478; Interurban Const. Co. v. Hayes, 191 Mo. 248, 89 S. W. 927.] However, with all the oral evidence in, the jury found that no agreement to pay back the money was made by the bank.

Appellant's complaint with reference to the court's refusal to strike out defendant's answer and certain objections to instructions may be answered by our view of the law in this character of a case, which view we find adopted in several well considered New York cases. It is to this effect: Where a bank received United States money for transmission of foreign exchange to a foreign country, and the receipt of the bank recites that the remittance is subject to the conditions of war, and if such remittance and delivery cannot be made through the foreign postal service, because of war conditions, the bank is liable only for the return of the foreign money, or its value, to the purchaser, and is not liable for the original amount that was paid in United States money. [Plischner v. Taylor, 193 N. Y. Supp. 236; Strohmeyer & Arpe Co. v. Guaranty Trust Co., 157 N. Y. Supp. 955.] See, also, the following cases where no receipt was given and the responsibility of the bank was not even attempted to be limited by agreement, yet in these cases it is held that on being unable through war conditions to deliver foreign money, the bank was liable only for the return of the foreign money or its value at the time of the demand of the purchaser for same: Fliker v. State Bank, 159 N. Y. Supp. 750; Calfand v. State Bank, 172 N. Y. Supp. 99.

Indeed, it is extremely doubtful whether defendant bank could make a valid contract to return the full amount of the depositor's money after investing it for him in rubles should the rubles afterward decline in value. Such a contract, conceivably, would be a gambling contract and *ultra vires*, and because such an agreement is a mere guarantee and not within the powers conferred on national banks.

We think what we have said above disposes of the numerous complaints presented, and we have concluded that the judgment is clearly for the right party and that no reversible error is apparent. Therefore, the judgment should be affirmed. It is so ordered. *Allen, P. J.,* and *Becker, J.,* concur.