MICHAEL BURKE *vs.* THE NATIONAL SHAWMUT BANK OF
BOSTON.

Suffolk.    October 7, 1932. — September 12, 1933.

Present: RUGG, C.J., CROSBY, WAIT, DONAHUE, & LUMMUS, JJ.

*Contract*, Construction, Termination. *Banks and Banking. Conflict of
. Laws.*

A bank in this Commonwealth, upon being paid a certain sum of United
   States money by a customer, issued to him in 1920 a "Foreign Cer-
   tificate of Deposit," reciting that the bank acknowledged receipt of
   a certain number of German marks "to be deposited . . . in our
   name for your account with our correspondent . . . [a certain bank
   in Germany]. Upon surrender of this certificate . . . we will de-
   liver our check against said deposit for the above amount. . . .
   This deposit being made at your request, is at your risk and peril ·
   and without responsibility on our part." The Massachusetts bank
   then caused credit for the stated amount of marks to be transferred
   to its account in the German bank. By the end of 1923 the mark
   had so depreciated in value as to be worthless; and the German bank
   closed the account of the Massachusetts bank and sent to it the
   entire amount of its deposit in German bank notes. Early in 1924
   the Massachusetts bank notified its customer of the closing of the
   account and offered to pay him the face amount of his certificate
   of deposit in German currency. Such offer was refused. Later in
   1924 the German government, in stabilizing the currency, passed
   a law creating the reichsmark as the unit of currency and providing
   that marks should be redeemable at the rate of one reichsmark for
   one trillion marks until a date in 1925, after which no redemption
   was allowed; and that bank deposits such as the Massachusetts
   bank had had should be payable in marks. In 1927 the mark had no
   exchange value, and the reichsmark had a substantial exchange value,
   approximately par. At that time the customer presented his certif-
   icate of deposit to the Massachusetts bank and requested a check for
   the amount thereof. Upon refusal, he brought an action against
   that bank to recover the exchange value at that time of the stated
   number of current reichsmarks. *Held*, that
      (1) The construction of the certificate of deposit was governed by
   the law of this Commonwealth;
      (2) The parties contracted on the basis of the continuing existence
   of the defendant's deposit in the German bank;
      (3) The closing of that account was a "risk and peril" assumed by
   the plaintiff;
      (4) When that deposit ceased to exist through no fault of the

defendant, the obligation of the defendant to the plaintiff also ceased except to return to him the marks returned to it by the German bank;

(5) The tender by the defendant of the marks in German currency discharged its obligation to the plaintiff;

(6) The plaintiff could not recover.

CONTRACT. Writ dated August 30, 1927.

The action was heard without a jury in the Superior Court by *O'Connell*, J., upon an agreed statement of facts. It appeared that on August 18, 1927, the German mark issued previous to the law of August 30, 1924, had no exchange value; and that the reichsmark had an exchange value of approximately 23.82 or par. Other material facts are stated in the opinion. The judge found for the defendant. The plaintiff alleged exceptions.

In his brief before this court, the plaintiff contended that he was entitled to recover the exchange value of one hundred fifty thousand current marks at 23.82, the rate of exchange prevailing on August 18, 1927.

The defendant in its brief stated: "It is the contention of the plaintiff that the defendant, in consideration of the payments made, agreed to deliver to him at any time, upon surrender of the certificate, its check for . . . marks then current. This contention necessitates the assumption that the defendant in August of 1920 sold the plaintiff a credit in marks for delivery at any time in the future — in other words, that the defendant gambled with the plaintiff with respect to the future of the mark. The contention of the defendant is that it did not sell the plaintiff credit in 1920; that, on the contrary, it undertook, at the plaintiff's request, to perform a service for him, and did, so far as it was legally required to do so, perform exactly what it undertook to perform; that it did not deliver him a check for . . . marks in 1927 because the account upon which it was understood the check was to be drawn had been closed and the risk of such closing was upon the plaintiff, not the defendant. . . ."

*A. F. Welsh*, for the plaintiff.

*W. T. Snow*, for the defendant.

RUGG, C.J.  This is an action of contract to recover the exchange value on August 18, 1927, of one hundred fifty thousand German marks.  The facts on which the action is sought to be maintained are these:  The defendant at all times here material was a national banking association, during 1920 maintained accounts in banks in Germany, and was engaged in the kind of foreign banking business permitted by the banking laws of the United States.  The mark was the standard monetary unit of value in Germany. In August and November, 1920, the plaintiff requested the defendant to send him certificates of deposit in marks and paid for the same in United States money in accordance with the agreed rate of exchange.  The defendant delivered on August 23, 1920, to the plaintiff an instrument addressed to him entitled "Foreign Certificate of Deposit" the body of which was in these words:  "We hereby acknowledge receipt of......Mks 100,000oo............One hundred thousand Marks......to be deposited by mail in our name for your account with our correspondent: ....BERLINER HANDELS GESELLSCHAFT...... Upon surrender of this certificate, properly endorsed, we will deliver our check against said deposit for the above amount with interest at the rate paid us by said correspondent on this deposit. This deposit being made at your request, is at your risk and peril and without responsibility on our part."  A like instrument was issued for fifty thousand marks on November 4, 1920.  On these respective dates the defendant caused credits for these two several amounts of marks to be transferred to its special account in that German bank.  On these dates the defendant maintained a credit balance in the named German bank payable in German currency and subject to withdrawal by check.  At the times of these transactions German currency in use was on an unsettled and unstable monetary basis and the exchange value in Boston fluctuated.

There was great depreciation in the value of the German mark so that on or about December 31, 1923, the German bank refused to continue the special accounts of the defendant, because the mark was so nearly worthless as not to

have value as a deposit, and closed out the defendant's account. Soon afterwards, the defendant received the entire amount of its deposit in German bank notes. On February 12, 1924, the defendant sent the plaintiff a notice to the effect that because of the devaluation of the German currency the German bank with which his marks had been deposited in the name of the defendant but at the risk of the plaintiff could no longer carry them on deposit and that the defendant was ready to pay the approximate face amount of his certificates in German currency. This offer by the defendant to the plaintiff was repeated during the trial. It was refused. By the end of 1923, the German mark had so depreciated in value as to be worthless. In 1924, the government of Germany undertook to stabilize its currency and put it on a gold basis. On August 30, 1924, a law was passed making the monetary unit of the new currency the reichsmark and providing for withdrawal from circulation of all the paper money then in circulation at the rate of one trillion marks for one reichsmark. Bank deposits, such as the defendant had with its German correspondent, were "not subject to revaloration [revalorization] under the German law" and were made payable in the paper currency existing prior to August, 1924, or at the rate of one reichsmark for one trillion marks provided they were called for before July 5, 1925. Until July 5, 1925, paper marks issued prior to August 30, 1924, were made redeemable at the rate of one reichsmark for one trillion marks and subsequently to that date no redemption was required.

On August 18, 1927, the plaintiff presented his two certificates, properly indorsed, to the defendant and requested a check for the amount stated in each. The defendant refused. This action was brought.

The rights of the parties depend upon the construction of the two written instruments issued in this Commonwealth by the defendant to the plaintiff and accepted and kept by the latter. These instruments are to be interpreted according to the law of this Commonwealth. There is no doubt that the defendant deposited the marks in its own name for the account of the plaintiff in the specified German bank.

The agreement is explicit to the effect that the deposit is at the sole risk of the plaintiff and without responsibility on the part of the defendant.  Since the deposit became of no value and was closed out by the German bank the defendant is under no liability.  The defendant did not guarantee that the German bank would continue to carry the deposit.  Its refusal to continue to carry the deposit and its transfer of the marks in currency to the defendant by way of closing out the account were perils of the transaction which were assumed by the plaintiff and from which the defendant was exonerated by the terms of the contract.  The parties contracted with reference to the continued existence of the deposit in the German bank.  By accepting the certificates issued by the defendant, the plaintiff undertook the risk of the continued existence of the deposit, unless it ceased to exist owing to some act or omission of the defendant.  The continuance of that deposit was an underlying condition of the contract of the parties.  If without fault of the defendant that deposit ceased to exist, the obligation of the defendant also ceased except to return to the plaintiff the marks returned to it by the German bank.  Plainly the defendant was free from fault on the facts here shown.  It has done or offered to do all that was required of it under the agreements.  In principle the case at bar is covered by *Alemian* v. *American Express Co.* 237 Mass. 580.  To the same effect is *Raicher* v. *National Bank of Commerce*, 216 Mo. App. 346.  The general principle is stated in *Texas Co.* v. *Hogarth Shipping Co. Ltd.* 256 U. S. 619, at pages 629–630, to the effect that "where parties enter into a contract on the assumption that some particular thing essential to its performance will continue to exist and be available for the purpose and neither agrees to be responsible for its continued existence and availability, the contract must be regarded as subject to an implied condition that, if before the time for performance and without the default of either party the particular thing ceases to exist or be available for the purpose, the contract shall be dissolved and the parties excused from performing it."  As already stated, the terms of the

contract in the case at bar cast the risk of continued existence of the deposit in the German bank on the plaintiff. See also *Koronec* v. *Highland Park State Bank*, 249 Mich. 342.

When the named German bank refused to continue the deposit for the reasons stated, the obligation of the defendant under its contract with the plaintiff to maintain the deposit was at an end. Tender by the defendant of the marks in German currency, a tender renewed at the trial, discharged its obligation to the plaintiff.

This ground is decisive in favor of the defendant. The general finding for the defendant was right. It is not necessary to examine the plaintiff's requests for rulings one by one nor to consider the other grounds argued by him, nor to discuss cases like *Tillman* v. *Russo Asiatic Bank*, 51 Fed. Rep. (2d) 1023, on which the defendant relies.

*Exceptions overruled.*