## Cardillo v. Torquato Bros.

*Kooser & Courtney,* for plaintiff.

*Shaver & Heckman, Bruce Sciotto,* for defendants.

Boose, P. J., March 26, 1946.—On March 15, 1937, plaintiff, with leave of court first had and obtained, confessed judgment against defendants to the above-stated number and term for $2,288.16 debt, $114.40 attorney's commission, or a total of $2,402.56, with interest from March 15, 1937, upon a warrant of attorney contained in a certain judgment note dated May 8, 1924, for 28,000 lire, payable three months after date, a copy whereof will hereinafter be set forth. Subsequently, on April 12, 1937, defendants presented their petition for a rule upon plaintiff to show cause why said judgment should not be

opened . . . In response to the rule awarded upon said petition, plaintiff filed an answer . . .

After hearing the evidence in support of the petition and answer, the rule to show cause why said judgment should not be opened and defendants let into a defense thereto was made absolute, and the court framed the following issue: The D. S. B. to stand as plaintiff's statement of claim; the petition to open as the affidavit of defense, and the answer as amended as plaintiff's reply, and the case is now ordered on the trial list. Before the case was called for trial before a jury, the parties agreed in writing to try the case before the court without a jury under the provisions of the Act of April 22, 1874, P. L. 109, and its supplements and amendments. From the pleadings and the evidence we find the following

### Facts

1. Plaintiff, Mauro Catena Cardillo, at the time of the occurrence of the facts hereinafter found, was and yet is a resident of the Borough of Windber, County of Somerset and State of Pennsylvania.

2. Defendants, Albert Torquato and John Torquato, partners under the firm name of Torquato Brothers, were at the same time and place engaged in conducting an international exchange and steamship agency, having their office and place of business at 1317 Midway, in the said Borough of Windber; and also held a license under the Act of June 19, 1911, P. L. 1060, regulating private banking in the Commonwealth of Pennsylvania.

3. On June 7, 1923, plaintiff delivered to Mr. A. V. Ianelli, the employe in charge of defendants' said office and place of business, $1,254.50 in American money on his own account, and $86.50 on account of plaintiff's wife, Belluccio Rachele, for deposit by defendants with the Casse di Risparmio Postali di Roma,

hereinafter called Postal Savings Bank of Rome, Italy, to his and her respective accounts, without any express directions as to the method of transmitting said money for the aforesaid purpose.

4. In return for the said sums of money delivered to defendants, their said employe issued and delivered to plaintiff the following receipts, which, translated into English, read as follows:

"TORQUATO BROS. COMPANY
INTERNATIONAL EXCHANGE AND S. S.
AGENCY

Notary Public          1317 Midway, Windber, Pa.
#488                   Windber, Pa., June 7, 1923

Received from Mr. Mauro Catena Cardillo, Italian Lire twenty-six thousand for deposit with the Postal Savings Bank of Rome, for account of Mauro Catena Cardillo.

Torquato Bros.
Italian Lire 26,000          per A. V. Ianelli

The delivery of this amount will be subject to the rules and regulations of the Foreign post offices in question. Claims should be made not later than four months from date."

"TORQUATO BROS. COMPANY
INTERNATIONAL EXCHANGE AND S. S.
AGENCY

Notary Public          1317 Midway, Windber, Pa.
#489                   Windber, Pa., June 7, 1923

Received from Mrs. Belluscio Rachele, Italian Lire two thousand lire for deposit with the Postal Savings Bank of Rome, for the account of Rachele Belluscio.

Torquato Bros.
Italian Lire 2,000          per A .V. Ianelli

The delivery of this amount will be subject to the rules and regulations of the Foreign post offices in question. Claims should be made not later than four months from date."

5. Within two or three days after receiving said sums of money from plaintiff, and for the purpose of transmitting and depositing the same to the credit of plaintiff and his wife in the Postal Savings Bank of Rome, defendants exchanged the American money received from plaintiff for Italian money, by purchasing Italian lire, from their correspondent in Rome, Banca Nazionale Del Reduce, hereinafter called National Bank of Veterans of Rome, through its New York Branch office or agency.

6. Under date of July 26, 1932, in a letter written to defendants, the said National Bank of Veterans of Rome notified the defendants that it had credited their account for the money transmitted as aforesaid, for disposition of draft no. 1510, in favor of the Postal Savings Bank of Rome. Said letter and translation thereof reads as follows:

Rome, July 26, 1923

"NATIONAL BANK OF VETERANS
 Head Office ROMA
 Correspondent of Bank of Italy
 BRANCH OFFICE: Rome-Genoa
 Milan-Trivoli-New York
Torquato Brothers
 Windber, Pa.

Take notice, that we have credited your account the following items:

| Cr. | Dr. | Amount vs. disposal to the order of Postal Savings Bank, issued on our Bank. |
|---|---|---|
| 30.000.00 | | der of Postal Savings Bank, issued on our Bank. |
| | 5.680.00 | |

Received through check No. 2669 from our Branch in New York with letter accompanying June 11-1923
 Very truly yours,
 National Bank of Veterans"

7. On June 11, 1923, defendants issued a draft upon the said National Bank of Veterans in Rome in favor of Postal Savings Bank of Rome for the money to be deposited therein to the accounts of plaintiff and his wife, and mailed said draft no. 1510 to the said Postal Savings Bank of Rome.

8. By a cablegram dated August 1, 1923, the Postal Savings Bank of Rome notified defendants that their said draft no. 1510 had been presented for payment several times, but remains unpaid; and requested defendants to remit another draft in order to place it in position to execute their commission for said deposit, or call upon some other credit institution which could favor the unhonored draft.

9. From the testimony of Serafini Pietro, chief clerk of the Postal Savings Bank of Rome, taken under commission for letters rogatory, it appears that defendants said draft no. 1510 arrived at said bank on June 23, 1923, and it was presented for the first time at the National Bank of Veterans in Rome on June 29, 1923, but payment was refused without giving any reason; that defendants were informed of this fact by registered letter dated July 4, 1923 (which defendants were unable to produce) ; and that said draft was presented once more on July 20, 1923, and it was definitely refused by said bank, which in the meantime had closed because of bankruptcy. Notice of this fact was given to defendants by registered letter dated August 1, 1923.

10. The moneys which plaintiff delivered to defendants for deposit in the postal savings bank to the accounts of himself and his wife were never received by said bank, because of the failure of the National Bank of Veterans in Rome to honor and pay the draft issued by defendants for that purpose.

11. From the report of Prof. Dr. Ettore Boncinelli, receiver of the National Bank of Veterans in

Rome, in bankruptcy, it appears that said bank was in financial difficulty for a year or more prior to the time plaintiff delivered said sums of money to defendants for deposit in the Postal Savings Bank of Rome, particularly with reference to its foreign remittances; but there is no evidence in the case showing that defendants had notice or knowledge of this fact, except that they were stockholders in said bank.

12. For the purpose of making proofs of claim against the National Bank of Veterans in Rome, then in bankruptcy, defendants, during the month of November 1923 requested plaintiff to deliver to them the receipts which had been issued to him when the sums of money had been delivered to defendants, but he declined and refused to surrender said receipts unless he was given some writing in substitution of said receipts, as evidence of the fact that he had paid said sums of money to defendants for deposit as aforesaid. Thereupon defendants executed and delivered to plaintiff a judgment or promissory note for 28,000 lire, payable five or six months thereafter, and received from plaintiff said two receipts.

13. Contemporaneously with the execution and delivery of said note, plaintiff signed and delivered to defendants a written memorandum as part of the same transaction and in explanation of the purpose of said note which, translated into English, reads as follows:

"Torquato Brothers Bank Drafts
International Exchange & S. S. Agents Money Orders
Established in 1905 and
Travelers'

Translations in all Languages Checks
Office Phone 107-J    Res. Phone 107-L to all
Foreign
1317 Midway Countries
Windber, Pa. Real Estate
Notary Public
"Nov. 24, 1923

I, the undersigned, Mauro Catena Cardillo, on my name and on that of my wife, Rachele Belluccio, declare that I received as proof of deposit made on June 7, 1923, through Torquato Bros., judgment note due in five months. Said note has only the object of protection and when the Postal Savings Bank of Rome, in whose care I have deposited money order #489-488 the total amount of 28,000 lire, and they have issued to me the pass books, I will return the note.

In witness of this
(Signed) Mauro Catena Cardillo"
June 7, 1923
No. 488 Paid $1254.00 for 26,000 Lire
No. 489 Paid 96.50 for 2,000 Lire

Sent to
Casse Di Disparmio
Postali di Roma
June 11, 1923
Draft No. 1510
Banca Nazionale del
Reduce Roma
Dept. in Bank 471,763.31 Lire."

14. Upon the maturity of said note, plaintiff requested a new note, whereupon defendants executed and delivered to plaintiff the note in suit, and the original note was surrendered to defendants, which has probably been lost or destroyed and was not offered in evidence. The renewal note is as follows:

"Lires 28,000                    Windber, Pa. 8 May 1924
Three months after date I promise to pay to the order of Mauro Catena Cardillo
Lire Twenty Eight Thousand ............. Dollars

With interest and without defalcation for value received. And I hereby authorize any attorney of any Court of Record in Pennsylvania or elsewhere to confess judgment against therefor, with costs of suit, release of errors and with five per cent. additional for

collection fees; and hereby also waive the right of inquisition, condemnation and appeal, and stay of execution, and in consideration of time given all claims for the benefit of any exemption laws.

Witness      hand and seal      the day and year above written.

Torquato Bros. Co. (SEAL)<br>
John Torquato    (SEAL)"

15. On March 15, 1937, plaintiff, with leave of court, confessed judgment against defendants upon the warrant of attorney contained in the aforesaid renewal note to the above-stated number and term.

<em>Discussion</em>

The foregoing findings of fact present the questions of law here involved. The first question thus presented for determination is this: Where a bank or firm engaged in doing a foreign exchange business receives money for transmission of its equivalent in foreign money for deposit in a bank in a foreign country, is it liable for the loss of the money through the negligence or default of its correspondent, if it exercised due care in selecting the agent through whom the money was to be transmitted and deposited? There can be no doubt that in the ordinary agreement to transmit money or credit, the relationship established between the remitting bank and its customer is that of principal and agent: 9 C. J. S. 369. The two receipts (4th fact) delivered by defendants to plaintiff upon the acceptance of the sums of money for transmission and deposit in bank in a foreign country constituted the agreement between the parties. Under said agreement, defendants accepted plaintiff's money for deposit in the Postal Savings Bank of Rome to the accounts of plaintiff and his wife. It is true, as found above, plaintiff gave no express direction as to the method to be employed for transmitting and deposit-

ing said money. In the absence of specific instructions, defendants were impliedly authorized by the nature of the transaction to appoint a necessary sub-agent in making remittance and deposit in a bank at a distant place, and the risk of the negligence or default of such subagent was assumed by plaintiff in the absence of an express agreement to the contrary: Tomassi v. Tioga Trust Company, 90 Pa. Superior Ct. 292; Skopetz v. American Exp. Co., 251 Mass. 136, 146 N. E. 262; Nicoletti v. Bank of Los Banos, 190 Cal. 637, 214 Pac. 51. In fact, it would have been impossible for defendants to have remitted or transmitted plaintiff's money direct to the Postal Savings Bank of Rome for deposit therein. Before this could be done, it was necessary to exchange the American money for Italian money of equivalent value and to transmit it through some foreign exchange agency. It will be observed from the aforesaid two receipts constituting the agreement between the parties, defendants did not personally undertake to deposit said money in the bank designated, but they accepted and received the plaintiff's money "for deposit" in said bank, which impliedly authorized the employment of a subagent for the purpose of transmitting and depositing the same in a bank in a foreign country. The case of Pawlowski v. Hirschfeld, 238 Mich. 25, 213 N. W. 118, is directly in point. There, like here, plaintiff paid money to defendants, who conducted a steamship and foreign exchange agency in Detroit, Mich., to transmit a certain sum of money, equivalent to a specified number of rubles, for payment to a designated Russian bank, and the evidence failed to show that defendants had not transmitted the money as agreed, although it had never been accounted for by the Russian bank; it was held that the plaintiff was not entitled to recover. Kolodig v. Highland Park State Bank, 226 Mich. 197, 197 N. W. 520, and Karnov

v. Goldman, 229 Mich. 551, 201 N. W. 447, are to the same effect. Ferrari v. First National Bank of Connellsville, Pa., 246 N. Y. 382, 159 N. E. 178, is another closely analogous case. There defendant, without foreign correspondents, having undertaken to establish a credit with a certain bank in a foreign country, for one depositing money with it for that purpose, delivered to the depositor checks on the foreign bank aggregating the amount of the proposed credit, and undertook to establish the same through a proper intermediary, and did in fact establish the credit, but the checks were not presented by the payee for payment within a reasonable time, and until after the withdrawal of the funds of the intermediary bank under bankruptcy proceedings; it was held that plaintiff could not recover from defendant bank so receiving the money and undertaking to establish the credit, since the withdrawal of the funds was not by its agent, but by operation of law, and that defendant bank issuing the checks had discharged its obligation to its customer, plaintiff. Without multiplying the cases, it may be stated as a general rule, which is followed by the weight of authority, that a defendant, accepting money for foreign remittance or credit not shown to have failed to transmit the money, is not liable on a foreign correspondent's failure to account therefor. The Pennsylvania cases follow this rule: Weissman v. M. L. Blitzstein & Co., 3 D. & C. 5; Matko v. Citizens National Bank of Connellsville, 9 D. & C. 494, and numerous cases cited. For exhaustive annotations of the decisions on the duty and liability of bank under agreement to remit money, see 27 A. L. R. 1488; 45 A. L. R. 1052; 69 A. L. R. 673; 6 Michie on Banks and Banking, p. 245.

From the evidence obtained under the commission for letters rogatory, it does appear that defendants' correspondent, the National Bank of Veterans in Rome,

was in financial difficulty, particularly in its default in honoring foreign exchange remittances, for a year or more prior to the time defendants received plaintiff's money for remittance and deposit in the Postal Savings Bank of Rome. But there is no evidence to prove that defendants had notice or knowledge of this fact at the time of remitting plaintiff's money. All that the law required of defendants was that they should exercise due and ordinary care and reasonable diligence in the selection of their foreign correspondent. The evidence shows that defendants had been remitting money and foreign exchange through this same correspondent ever since its organization. This bank was not selected for this single transaction. In fact the money of another customer was included in the same remittance. The evidence does not convict defendants of a failure to exercise due and proper care and diligence in the selection of their foreign correspondent.

Assuming, however, for the purpose of plaintiff's argument and contention, that defendants' agreement and undertaking was to deposit plaintiff's money in the Postal Savings Bank of Rome, and that nothing short of the actual deposit in said bank would relieve them from liability, or that defendants failed to exercise due and proper care in the selection of their correspondent, it does not place plaintiff in any better or stronger position in his effort to recover against defendants in this action. It must be remembered that plaintiff's present cause of action is not based upon the original agreement embodied in the two receipts hereinbefore referred to. Plaintiff's cause of action upon said agreement, if any, occurred back in 1923. Any such cause of action has long since been barred by the statute of limitations. Plaintiff's present cause of action rests entirely upon the note in suit. After the opening of the judgment confessed upon the warrant of attorney contained in said note, the trial

of the issue is to be had as if no judgment had been entered, the same burden of proof being imposed upon plaintiff that was imposed upon him, and the same defenses given to defendants that were open to them at the commencement of the suit; plaintiff is put to his proof of cause of action precisely as if no judgment had been entered, he must make out his case subject to the right of defendants to defeat him upon any ground which would have sufficed for that purpose if no judgment had been entered. This preliminary observation leads us to the determination of the pivotal and controlling question in the case: What was the consideration for the note in suit?

From the evidence it appears that after both plaintiff and defendants were informed of the insolvency and bankruptcy of the National Bank of Veterans in Rome, and that the draft upon said bank in favor of the Postal Savings Bank of Rome had not been honored and paid, defendants requested plaintiff to deliver to them the aforesaid receipts, which had been given when they accepted his money, to enable the defendants to make proofs of claim in the bankruptcy proceedings. Plaintiff declined to surrender said receipts unless he was given some writing in substitution of said receipts, and as written evidence of the fact that he had paid the said sums of money into the hands of defendants for transmission and deposit as above set forth. Thereupon the parties devised upon the plan that defendants would give plaintiff a judgment or promissory note for five or six months; and contemporaneously therewith and as part of the same transaction, plaintiff signed and delivered to defendants a written memorandum which was intended as explanatory for the purpose of said note. This transaction took place on or about November 24, 1923. Upon the maturity of said note, plaintiff insisted that defendants give him a new note which is the

note upon which judgment was subsequently confessed and the note now in suit; and the original note was surrendered to defendants and apparently has been lost or destroyed. In their petition to open the judgment, defendants allege that the original note was without any consideration passing from plaintiff to defendants; and that the renewal note was "subject to the same understanding, terms and conditions as the original note."

After a careful reading of the evidence, it is manifest that both the original and renewal notes were without any consideration. It is elementary that when separate writings are executed between the same parties at the same time, in the course and as parts of the same transaction, and intended to accomplish the same general object, they are to be construed as one and the same instrument. In accordance with this principle, a note and contemporaneous memorandum executed as part of the same transaction will be construed together as forming one contract in a controversy between the original parties to the instrument. The provisions contained in the contemporaneous writing may control the liability of the parties. In an action on a note by the payee against the maker, the contemporaneous writing may defeat recovery by showing failure of considerations: 8 C. J. 196, and numerous cases cited in support of the text. When the original note was executed and delivered by defendants, plaintiff signed and delivered to defendants a contemporaneous written memorandum, which expresses the purpose of said note, in which plaintiff declares "that I received as proof of deposit made on June 7, 1923, through Torquato Bros., a judgment note due in five months. Said note has only the object of protection—". Said note was given only as a substitution for the receipts which had been surrendered by plaintiff to defendants to enable them to

make proof of his claim in the bankruptcy proceedings. To constitute a valid consideration, it must consist of some benefit or advantage accruing to one party to a contract or some loss or disadvantage incurred by the other party: Bankers Trust Company v. Economy Coal Co., 224 Iowa 36, 276 N. W. 16. The consideration may be a detriment to the promisee as well as a benefit to the promisor: Third National Bank and Trust Co. v. Rodgers, 330 Pa. 523. Plaintiff did not part with anything of value, or sustain any detriment when he surrendered his receipts to defendants, nor was it of any benefit to defendants to have said receipts. The only purpose of having the possession of said receipts was to enable defendants to make proof of claim for plaintiff's money, which was for his benefit, and not for the benefit of defendants. Plaintiff has not received this benefit, because he refused to accept the dividend allowed upon his claim. His right to recover the amount of said dividend is not embraced within the note in suit. In brief, there was no consideration moving from plaintiff to defendants for said note, and payment of the same cannot be enforced for want of consideration.

After defendants forwarded and transmitted plaintiff's money to their foreign correspondent, the National Bank of Veterans in Rome, the receipt of which was acknowledged, and drew a draft upon said bank in favor of the Postal Savings Bank of Rome, the receipt of which was also acknowledged, defendants had performed and discharged their undertaking and obligation to plaintiff. Thereafter, the sole liability rested upon the National Bank of Veterans to honor and pay said draft, or return the money to plaintiff. This was the debt and liability of said bank, and not debt or liability of defendants. If the original note and contemporaneous written memorandum could be construed, as plaintiff contends it should be, as a note

given to secure the payment of the debt and liability of another arising from the default of the National Bank of Veterans, without other considerations, the said note is nudum pactum and void: Conmey v. Macfarlane, 97 Pa. 361; Paxson et al. v. Nields, 137 Pa. 385; Raicher v. National Bank of Commerce, 216 Mo. App. 346, 268 S. W. 111. Defendants' allegation that the renewal note was executed and delivered subject to the same understanding, terms and conditions as the original note is supported by the evidence, and is not contradicted by plaintiff. If the giving of the original note was without consideration, the renewal note is open to the same defense: Whipple v. Lewis, 74 Pa. Superior Ct. 48. Where no consideration has been given for an original note, there is, as between the immediate parties no enforcible contract or promise, and no amount of renewals, without additional consideration being received, will furnish a basis for waiver or estoppel: First National Bank of Williamsburg v. Smith, 132 Pa. Superior Ct. 73. A want or failure of consideration for the note sued on constitutes a good defense in an action between the original parties: Lackawanna Trust Co. v. Carlucci, 264 Pa. 226; Terre Hill National Bank v. Sensenig, 95 Pa. Superior Ct. 368. Want or failure of consideration is a defense to an action on a note under seal: Roper v. Scevcnik et al., 128 Pa. Superior Ct. 453; Gsell v. Hellman et al., 108 Pa. Superior Ct. 258. It must be concluded that plaintiff, in confessing judgment upon the renewal note, is using the note in suit for a purpose different from that for which it was given. This becomes more apparent when it is remembered from the date of its maturity on August 8, 1924, until the confession of judgment thereon March 15, 1937, no attempt was made to enforce the payment thereof.

This is one of those unfortunate cases where one of two innocent parties (plaintiff or defendants) must

suffer a financial loss through the default and wrong of a third party (the National Veterans Bank in Rome), and this loss must fall upon the one whose agent was responsible therefor. Under the authorities above cited, the said National Bank of Veterans in Rome, when it received plaintiff's money and acknowledged receipt thereof with instruction to honor draft in favor of the Postal Savings Bank of Rome, became plaintiff's agent, and thereafter defendants were not responsible for the default or negligence of said correspondent: Tomassi v. Tioga Trust Company, 90 Pa. Superior Ct. 292; Skopetz v. American Express Co., 251 Mass. 136, 146 N. E. 262.

Based upon the facts as found and the law applicable thereto, we arrive at the following

## Conclusions of law

1. When defendants, being engaged in the foreign exchange business, received plaintiff's money for transmission of its equivalent in foreign money for deposit in the Postal Savings Bank of Rome, they are not liable for the loss of the money through the default or negligence of their correspondent, if they exercised due care in the selection of the agent through whom the money was transmitted for deposit.

2. The two receipts issued by defendants to plaintiff when he delivered his money into their hands for transmission and deposit constituted the agreement or contract between the parties; and parol evidence is not admissible to vary or contradict said agreement.

3. The said agreement being silent as to the method to be employed for the transmission and depositing of said money, defendants were impliedly authorized by the nature of the transaction to appoint a necessary subagent in making remittance and deposit in the Postal Savings Bank of Rome, and the risk of the negligence or default of such subagent was assumed by plaintiff.

4. After defendants forwarded and transmitted plaintiff's money to their foreign correspondent, the National Bank of Veterans in Rome, the receipt of which was acknowledged, and drew a draft upon said bank in favor of the Postal Savings Bank of Rome, the receipt of which was also acknowledged, defendants had performed and discharged their undertaking and obligation to plaintiff; and thereafter they were not responsible for the default or negligence of said correspondent, who was then the agent of plaintiff.

5. Plaintiff's present cause of action is not based upon the agreement embodied in said two receipts; and plaintiff's cause of action upon said agreement, if any, has long since been barred by the statute of limitations.

6. Plaintiff's present cause of action rests entirely upon the note in suit, which was executed and delivered by defendants to plaintiff in renewal of a prior note in like amount; and both of said notes were without any consideration.

7. Plaintiff, in confessing judgment upon said renewal note, has used the note in suit for a purpose different from that for which it was given and intended.

8. Plaintiff is not entitled to recover upon the note in suit.

9. The judgment shall be entered in favor of defendants.

10. The costs shall follow the judgment.

### Order

Now, March 26, 1946, it is ordered and directed that the prothonotary shall give notice to the parties or their counsel of records of the filing of the foregoing findings of fact and conclusions of law; and unless exceptions thereto are filed within 30 days after service of said notice, judgment shall be entered by the prothonotary sec. leg.