BANKERS TRUST COMPANY, Plaintiff, Appellant, v. ECONOMY COAL COMPANY et al., Defendants, Appellees, CLARA R. NOWELS et al., Defendants, Appellants, GEORGE N. RAMSAY et al., Defendants not appearing.

No. 44060.

NOVEMBER 16, 1937.

Devitt & Eichhorn, for Bankers Trust Company, appellant.

Stipp, Perry, Bannister & Starzinger, for Robert C. Ramsay, Stella R. Miser, Dorinda Mayer, Roy J. Ramsay, Margaret R. Beal, Clara R. Nowels, defendants-appellants.

Stanley G. Swarzman, for Phyllis J. Miser, Martin Johnson Miser, George William Miser II, Phyllis J. Miser, Guardian and Administrator, defendants-appellants.

Parrish, Guthrie, Colflesh & O'Brien, for Economy Coal Co., defendants-appellees.

Paul M. Payne, for John H. Ramsay, defendant-appellee.

ANDERSON, J.—This action was instituted by the executor of the estate of George H. Ramsay, deceased, against the Economy Coal Company, a corporation, and John H. Ramsay, to recover an amount approximating $87,000, claimed to be due the estate of George H. Ramsay, deceased, from the defendant coal company as a balance due upon an accrued salary account claimed to be due to the said deceased at the time of his death. The pertinent facts disclosed that the Economy Coal Company is a corporation organized under the laws of the State of Iowa, and engaged in the business of mining and marketing coal; that the deceased, George H. Ramsay, and his son, John H. Ramsay, together with one other, purchased the coal company in 1907, and continued to develop and operate the same to the date of the death of the father, George H. Ramsay; and that after the father's death which occurred October 17, 1934, the business of the corporation was continued by the surviving son, John H. Ramsay. There is no record as to the value of the assets of the corporation, defendant. After January 1, 1928, the father and son owned all the capital stock of the corporation, in equal amounts; the father, George H., was the president, and the son, John H., was the secretary-treasurer and manager. This situation continued until September, 1932, when John was appointed guardian for his father, after which time John was elected president and treasurer and his wife, who then held one share of the capital stock, was elected vice president and secretary. George

H. Ramsay left surviving him ten children, seven of whom joined with the plaintiff in this case and the others failed to so join.

The books of the corporation are in evidence and indicate that the accounts of George H. Ramsay and John H. Ramsay are made up of credits from different sources and salary items amounting to $10,000 a year to each of the Ramsays, father and son, the sole stockholders of the corporation, and the officers and directors thereof. The salaries so credited to the accounts of the father and son were regularly fixed and determined by regular and proper action of the corporation. The corporation did not make sufficient profits to pay these salaries in full, and each year there was a deficit in the salary accounts and in January, 1931, the books show there was a balance due George H. Ramsay of $73,333, and a balance due John H. Ramsay of $59,966. At the time this action was instituted, in October, 1936, these accounts had accumulated and increased, and there was at that time due George H. Ramsay, or his estate, approximately $87,000, and John H. Ramsay approximately $80,000.

On January 30, 1931, the minute book of the corporation shows the following entry:

"Des Moines, Iowa, January 30th, 1931. Meeting of Stockholders and directors and officers called by George H. Ramsay, President. Motion by George H. Ramsay: Resolved that the salaries now owing to J. H. Ramsay or George H. Ramsay shall not be due until the death of the survivor of J. H. Ramsay, and George H. Ramsay, unless said mines shall be sooner sold, in which event said unpaid salaries shall become due and payable immediately. Seconded by J. H. Ramsay, carried. Motion to adjourn, carried. George H. Ramsay, President, J. H. Ramsay, Secretary-Treasurer."

After the passage and adoption of said above-quoted resolution, each of the said Ramsays withdrew from the said corporation various amounts but not any one year equaling the amount of their annual salaries, except in one instance in which the father, George H., withdrew $6,147.92, which amount is indicated in the account as a loan paid by the corporation to the said George H. Ramsay. Interest at six per cent was credited to the past-due salary accounts each year, and this, together with the amounts of the unpaid salaries for succeeding years,

aggregated the total amounts due each of the Ramsays, as above indicated.

At the close of all the testimony, both parties made motions for directed verdicts. The plaintiff's motion was overruled and the defendants' motion was sustained, and judgment was entered dismissing plaintiff's cause of action, and plaintiff prosecutes this appeal.

The defendants' motion for a directed verdict was upon the grounds: (1) That no competent evidence was offered and introduced to sustain the allegations of the plaintiff's pleadings or which would entitle the plaintiff to recover. (2) That the record shows without dispute that at a meeting of the sole stockholders and directors and officers of the corporation a resolution was passed which provided that the salaries then owing J. H. and George H. Ramsay should not become due until the death of both of the Ramsays, unless the mines should be sold prior to such death, in which event the unpaid salaries should immediately become due and payable. (3) That the record shows without dispute that the said J. H. Ramsay and George H. Ramsay were the sole and only stockholders and officers and directors of the corporation, and that they were the parties who made and executed and signed the afore-mentioned resolution. (4) That the record shows without dispute that the payment of the salaries had been deferred until there was sufficient funds to pay the same, and that there was ample and sufficient consideration to support the resolution. (5) That there is no sufficient evidence in the record to support the claim of any waiver of the terms of said resolution; that the record shows that the resolution was carried out, that said mines have not been sold, and that J. H. Ramsay is still living. (6) That the record shows that the balance of the salary accounts are still owing, but that the same are not yet due, and that the said resolution has not been set aside or waived and is still in full force and effect. (7) That the estate of George H. Ramsay has not been injured or damaged in any way and that the executor or heirs of said estate have no greater rights in reference to the salary account of George H. Ramsay than he had during his lifetime.

Error is claimed by the appellant in sustaining the motion to direct a verdict for the following reasons: (1) There was no acceptance of the resolution deferring payment of the salary accounts. (2) There was no consideration given by the Economy

Coal Company for the extension of the due date of said accounts. (3) The resolution was waived and abandoned. (4) Plaintiff's claim is not barred by the statute of limitations. Code 1935, section 11007.

 In our view of the case it will not be necessary to discuss or pass upon the question as to the bar of the statute of limitations. However, if the resolution deferring payment of the salary accounts should be held not good, for any of the reasons urged by the appellant, in such event, the salary accounts of George H. and John H. Ramsay would be continuous running accounts, and the statute of limitations would not commence to run until the status of such accounts was changed.

 The crucial questions involved in the appellant's claimed errors are whether the resolution in question created a binding contract between George H. and John H. Ramsay and the Economy Coal Company, and involved in this is the question as to whether or not there was a consideration and as to whether or not there was an acceptance of the resolution by George H. Ramsay. Another contention of the appellant is that, even though the resolution did constitute a contract with a sufficient consideration, it was ignored and waived by all parties concerned due to continued payments upon the past-due salary accounts.

It is true, as contended by appellant, that in order to create a binding contract there must be an offer and acceptance; in other words, a meeting of the minds of the contracting parties. The appellant cites various authorities for this proposition, but it is too elementary to require any discussion or a reference to authorities. Appellant also contends that before a resolution of a board of directors of a corporation can constitute a contract an acceptance thereof by the offeree must be shown, and this must be conceded as the established law. Appellant contends that the resolution in question was entirely in favor of John and his heirs, and entirely opposed to the interests of the father and his heirs. We cannot follow the appellant in this contention. These two men each owned one-half of the corporate stock; each was equally interested in its assets and in its continuance as a going, active corporation; each had large amounts due from the corporation by reason of unpaid salaries. These claims were due and either of the Ramsays could have insisted upon pay-

ment, and perhaps forced liquidation of the corporation and a discontinuance of its business. They had been the owners and operators of the corporation for more than twenty-five years; they were father and son, and the interest of each was equal. The appellant contends that what these two men did in preparing and adopting the resolution involved, they did as officers and stockholders of the corporation, and that there is no evidence and no sound inference that these men as individuals accepted the terms of the resolution. It must be kept in mind that they were the sole officers and stockholders of the corporation, and that this resolution affected no third party, as was the case in Kalamazoo Novelty Works v. Macalister, 40 Mich. 84, and other cases cited by appellant. These two men knew when they prepared, offered, and had the corporation adopt the resolution in question, that it was not later to be communicated to them for their acceptance and, indeed, it would seem that any such communication would be an idle and useless gesture.

Where the sole owner of a corporation deals with corporate property it has been said that acts done by him or at his instance in reference to the property of the corporation are done on its behalf or for its benefit, and are binding on the corporation. 14 C. J. 865. Conversely it would seem that where the sole owners of a corporation pass a resolution affecting them individually, they would be bound by such action.

"One who is apparently the sole stockholder and sole acting officer of the corporation and conducts all negotiations and signs a contract on its behalf, is bound by the terms of the contract." 14A C. J. 372.

"An officer of the corporation who takes part in a corporate transaction and thereby asserts that the corporation has the power to enter therein is estopped from denying the validity of the transaction, and the same is true of an officer who receives the benefit of the transaction." 14A C. J. 333.

■■■ There is no merit in the argument that the only purpose of the passage of the resolution was to accommodate John H. Ramsay. It was no more an accommodation to him individually than it was to his father. The son was sixty-six years old at the time, and the father was over eighty, but there was no certainty as to which would first depart this life. It was a certainty, however, that either of these men during their lifetime, or their

estates in the event of death, could insist upon the payment of the large amount of accumulated and past-due salaries.

A consideration consists of some benefit or advantage accruing to one party to a contract or some loss or disadvantage incurred by the other. In other words, any benefit to the person making the promise, or any loss, trouble, or inconvenience to, or charged upon, the person to whom it is made. This court has said in Homesteaders Life Association v. Salinger, 212 Iowa 251, 264, 235 N. W. 485, 491, that:

"Consideration which will support a contract may consist not only of gain to one contracting party, but also of a detriment or inconvenience to, or liability assumed by, another."

In this instance, there was a sufficient consideration for the passage and acceptance of the resolution as it was distinctly a benefit to the corporation and a detriment or inconvenience to the parties to whom the salaries were due. It was also a benefit to the individuals, the sole stockholders and officers, to be assured of the continuance of the corporation and its corporate business.

We are constrained to hold that there was a sufficient consideration for the contract or agreement as evidenced by the resolution, and that, in the circumstances disclosed by this record, there was an acceptance of its terms by the only parties interested, George H. and John H. Ramsay.

While it is intimated in argument that the son John H. induced his father to offer the resolution in question, vote for it, and sign the minutes in his, John's, own interest, there is absolutely no evidence and no reasonable inference that there was any fraud, misrepresentation, undue influence, or overreaching on the part of the son, John H., in the transaction here involved. It is true that a guardian was appointed for the father about a year after the resolution was passed, but there is no evidence of any incompetency on the part of the father at the date of the passage of the resolution.

 The appellant insists that there was a waiver by the parties interested of the resolution deferring the payment of salaries, and as a basis for this contention it argues that after the passage of the resolution each of the parties withdrew from the accumulated salary accounts certain items of cash. As we have indicated in the foregoing statement of facts, there is no

evidence that these accounts were reduced in their original amounts by reason of any withdrawals by the two parties concerned. In fact, the accounts appreciably increased thereafter. We have held that:

"Waiver is everywhere defined as the intentional relinquishment of a known right. The intention, where the waiver is implied, is a matter of inference, to be drawn from the facts and circumstances relied upon to constitute the same." North Am. Ginseng Co. v. Gilbertson, 200 Iowa 1349, 1352, 206 N. W. 610, 612.

In this case there is no evidence showing an intention to relinquish or waive any rights by any of the parties concerned, or the corporation, accruing to them or any of them through the passage of the resolution. There was nothing in the resolution, either written or implied, that would prevent the corporation from making payments of any or all of these deferred salaries, and there can be no inference of waiver or intention to waive implied from such payments, even though made. And too, waiver must be established by clear, satisfactory, unambiguous evidence, and the intention to waive must be free from doubt. Eclipse Lumber Co. v. Bitler, 213 Iowa 1313, 241 N. W. 696.

It is our holding that there was no error committed by the trial court in directing a verdict for the defendants and dismissing plaintiff's cause of action.—Affirmed.

HAMILTON, C. J., and MITCHELL, KINTZINGER, DONEGAN, PARSONS, SAGER, and STIGER, JJ., concur.