Jerry W. AUDUS, Appellee,

v.

SABRE COMMUNICATIONS
CORPORATION,
Appellant.

No. 95–1362.

Supreme Court of Iowa.

Oct. 23, 1996.

---

William J. Rawlings and Michael P. Jacobs of Rawlings, Nieland, Probasco, Killinger, Ellwanger, Jacobs & Mohrhauser, Sioux City, for appellant.

Steven R. Jensen of Crary, Huff, Inkster, Hecht & Sheehan, P.C., Sioux City, for appellee.

Considered by McGIVERIN, C.J., and LARSON, NEUMAN, SNELL, and ANDREASEN, JJ.

McGIVERIN, Chief Justice.

This case requires us to determine whether the district court properly awarded plaintiff Jerry W. Audus damages in the amount of $228,826.32 in his breach-of-contract and wage-collection action for unpaid sales commissions. We must also decide whether the district court erred in denying Audus' application for attorney fees. We affirm the court's judgment for plaintiff Audus, reverse the ruling denying attorney fees to Audus, and remand for hearing to fix the attorney fees.

I. *Background facts and proceedings.* The dispute in the present case centers around an oral employment arrangement between Audus and defendant Sabre Communications Corporation (Sabre), which manufactures and sells communication towers and high frequency antenna systems. In early

1985, Audus and David Bailey Aalfs, the president and sole shareholder of Sabre, discussed the possibility of Audus managing tower sales for Sabre. Aalfs offered Audus a salary of $30,000 per year plus a three percent commission on sales. The parties agree that they did not discuss the timing of commission payments. They give differing versions of their arrangement with regard to the basis for the commissions. Plaintiff Audus claims that Aalfs told him the commissions would be based on all sales generated by Audus, while Sabre maintains that Aalfs told Audus the commissions would be based on Audus' sales between $500,000 and $1,000,000 each year, with any additional compensation to be at Aalfs' discretion. The parties did not execute a written agreement.

Pursuant to the oral arrangement, Audus started working for Sabre in March 1985. During the period of Audus' employment at Sabre, the company expanded and prospered. Sales rose from $65,055 in 1984 to over $2 million in 1990, leveling off at over $1 million in 1991 and again in 1992. The number of Sabre's employees increased from five or six in 1985 to twenty-three or twenty-four in 1992.

Audus' compensation during that period of employment followed a somewhat irregular pattern. Audus claims that he generated more than $10.5 million in sales while working for Sabre. He received his $30,000 yearly salary in weekly payments. On the basis of a log in which he recorded his sales and calculated the commissions to which he claims he was entitled, Audus from time to time requested payments in varying amounts as draws upon the accumulating commissions. Audus maintains that those requests were never refused, while Aalfs contends there were occasions when Aalfs did not pay what Audus asked. In any event, during the several years of Audus' employment, Aalfs paid Audus considerably more than the maximum commission allowed under Aalfs' version of the employment arrangement. According to Aalfs, the extra amounts were paid solely at his discretion. In addition to those sporadic commission payments, in March 1988, Audus began drawing $1,000 in commission payments every four weeks, although he initially asked for $1,500 every four weeks.

During Audus' employment at Sabre, any references by the parties to the commission arrangement were only in general terms. Audus claims that he asked Aalfs to obtain life insurance in order to protect Audus' accumulating commissions and that Aalfs mentioned the possibility of revising the commission arrangement. Audus also contends that during conversations with Aalfs, Audus referred to, and Aalfs did not dispute, the accrual of commissions. Aalfs asserts that the conversation regarding insurance involved only the possible purchase of an annuity as an incentive for Audus to continue working for Sabre. Aalfs further asserts that during the time Audus was employed at Sabre, Audus never mentioned any accrued commissions or indicated he felt he was entitled to further payments.

In June 1992, Audus quit his job with Sabre and told Aalfs that he wanted payment of his outstanding commissions by the end of the year. According to Audus, Aalfs said he would have the company's bookkeeper calculate the amount of those commissions. Aalfs, on the other hand, maintains that he told Audus all commissions had been paid. In a letter written to Aalfs in August 1992, Audus again demanded the remaining commissions. Aalfs responded in October 1992 with a letter setting forth his version of the oral employment arrangement and denying Audus was entitled to any further payments. At trial, however, Aalfs testified that Sabre probably owed Audus approximately $4,000 in additional commissions.

On September 29, 1993, Audus filed a petition in district court. Count I of the petition alleged a breach of the oral employment contract and sought unpaid commissions plus interest and court costs. Count II alleged a violation of the Iowa Wage Payment Collection Law, Iowa Code chapter 91A, and sought unpaid commissions plus liquidated damages, court costs, and attorney fees. *See* Iowa Code § 91A.8 (1993). Sabre's answer denied any liability and affirmatively alleged that Audus' claims were partially barred by the statute of limitations. *See* Iowa Code ch. 614.

After defendant Sabre filed, and the district court denied, an application for separate adjudication of law points, Sabre filed a motion for reconsideration of its application for separate adjudication of law points, or, alternatively, summary judgment. *See* Iowa R.Civ.P. 105, 237. Sabre contended that a portion of Audus' claims were barred by the two-year limitations period, Iowa Code section 614.1(8), arguing that commissions claimed by Audus constituted "wages" for purposes of Iowa Code section 614.1(8), that section 91A.3 precluded deferral of commission payments beyond twelve months, and that the commissions were due and payable at the time of each sale made by Audus. The district court deemed the motion to be a motion for summary judgment and determined: 1) that the two-year limitations period of section 614.1(8) applied to Audus' breach-of-contract claim; 2) that Audus' chapter 91A claims accrued in regular twelve-month intervals; 3) that chapter 91A did not limit Audus' breach-of-contract claim; and 4) that the finder of fact must determine when the twelve-month intervals ended for purposes of the chapter 91A claim and when the commissions became due and payable for purposes of the breach-of-contract claim.

The case was tried to a jury. At the close of plaintiff's evidence, defendant Sabre moved for a directed verdict based on the two-year limitations period of section 614.1(8). The motion also challenged the sufficiency of the evidence to establish either an oral contract for the payment of commissions on demand or a breach of such contract. The trial court overruled both that motion and Sabre's renewed motion for a directed verdict made after the close of all evidence.

The jury returned a verdict in favor of plaintiff Audus in the amount of $228,826.32, and the trial court entered judgment for that amount plus interest and taxed court costs to Sabre. Sabre then filed a motion for judgment notwithstanding the verdict and motion for new trial, and Audus filed an application for the award of attorney fees. The trial court overruled Sabre's motions and Audus' application.

Defendant Sabre appeals from the trial court's judgment and ruling denying the motions for judgment notwithstanding the verdict and new trial; plaintiff Audus cross-appeals from the trial court's ruling denying his application for attorney fees.

II. *Standard of review.* Our review in this law action is for correction of errors at law. Iowa R.App.P. 4. We are bound by the district court's findings of fact if they are supported by substantial evidence. Iowa R.App.P. 14(f)(1).

III. *Award of damages to plaintiff Audus.* On appeal, defendant Sabre raises three contentions: 1) the parties' alleged agreement regarding commission payments was too vague and indefinite to be enforceable; 2) Audus' claim for commissions allegedly earned more than twelve months before the last commission payment is unenforceable as a matter of law; and 3) Audus' claim for commissions allegedly earned before September 29, 1991, is barred as a matter of law. We turn now to these arguments.

■■■ A. *Terms of the agreement concerning commissions.* In its motion for directed verdict and motion for judgment notwithstanding the verdict, defendant Sabre contended the evidence did not support enforceability of the commission agreement as urged by plaintiff Audus. In determining that Audus was entitled to recover damages in the amount of $228,826.32 from Sabre, the jury apparently agreed with Audus that the parties had an oral agreement for commissions based on three percent of all sales generated by Audus, rather than three percent of sales between $500,000 and $1 million in a given year. The trial court overruled Sabre's motions and entered judgment on the verdict for Audus.

The existence of an oral contract, as well as its terms and whether it was breached, are ordinarily questions for the trier of fact. *Dallenbach v. Mapco Gas Prod., Inc.,* 459 N.W.2d 483, 486 (Iowa 1990). In order to find that an oral contract existed, there must be sufficient evidence of its terms to ascertain the duties and conditions established. *Burke v. Hawkeye Nat'l Life Ins. Co.,* 474 N.W.2d 110, 113 (Iowa 1991). However,

while courts cannot find a contract where none exists, they are reluctant to hold that a contract is too uncertain to be enforceable. *In re Estate of Ohrt,* 516 N.W.2d 896, 901 (Iowa 1994).

■ Sabre contends the version urged by Audus cannot be enforced because it is too vague and indefinite. It argues that Audus' claim is based on only one conversation between Audus and Aalfs, that Audus' periodic requests for commission payments had no relationship to the alleged agreement, and that the parties' conduct establishes only that Audus was paid the commissions he demanded. Sabre further maintains that the parties never discussed the timing or amount of the commission payments and that Audus did not refer to the amount of commissions he felt had accrued. Thus, according to Sabre, there is no basis on which the jury could find an agreement concerning commissions to be paid.

However, we agree with Audus that the oral agreement for commissions based on all sales is enforceable. The jury resolved the factual dispute regarding the basis for the commissions in favor of Audus. That finding is supported by substantial, although not uncontroverted, evidence. The record contains Audus' testimony about the parties' agreement, evidence that Sabre paid Audus more than required under Sabre's version of the agreement, evidence that Audus worked for seven years on the basis of his belief that his commissions would be based on all sales, and evidence that the parties occasionally referred to accumulating unpaid commissions. Such evidence is sufficient to support the jury's resolution of the factual question concerning the basis for the commissions.

Sabre cites *Drake v. Block,* 247 Iowa 517, 74 N.W.2d 577 (1956), as support for its contention that the agreement alleged by Audus is unenforceable. However, *all parties* in that case agreed that they never settled upon a definite amount for the bonus plan in question, and thus we found that the attempt to recover a bonus under an express contract failed as too indefinite and uncertain. *Drake,* 247 Iowa at 521, 74 N.W.2d at 580. In contrast, the record in the present case contains evidence supporting the agree-

ment as alleged by Audus. The *Burke* case, also cited by Sabre, is similarly inapposite; we concluded in that case that the record was devoid of substantial evidence to support the alleged oral contract. *Burke,* 474 N.W.2d at 113. We find no error in the district court's refusal to overturn the jury's finding regarding the parties' oral agreement.

■ B. *Enforceability of commissions earned more than twelve months before the last commission payment.* Count II of Audus' petition alleged a violation of the Iowa Wage Payment Collection Law, Iowa Code chapter 91A. The act provides in relevant part:

... if any of these wages due [the employer's] employees are determined on a commission basis, the employer may, upon agreement with the employee, pay only a credit against such wages. If such credit is paid, the employer shall, at regular intervals, pay any difference between a credit paid against wages determined on a commission basis and such wages actually earned on a commission basis. *These regular intervals shall not be separated by more than twelve months.* ... An employer and employee may, upon written agreement which shall be maintained as a record, vary the provisions of this subsection.

Iowa Code § 91A.3(1) (emphasis added).

Defendant Sabre contends the district court should have ruled that section 91A.3(1) bars Audus' claim for commissions earned more than twelve months before the date of the last commission payment because the parties had no written agreement varying the provisions of that section. Arguing that the provisions of section 91A.3(1) were designed to protect employers as well as employees, Sabre asserts that recognizing claims for commissions earned more than twelve months before the last commission payment would subject employers to stale, fabricated, or fraudulent claims. In effect, Sabre argues that section 91A.3(1) functions as a one-year statute of limitations.

Plaintiff Audus disputes Sabre's interpretation of section 91A.3(1). He notes that section 91A.3(1) contains no language pre-

cluding enforcement of claims involving commissions which are not paid within twelve months. Further, Audus argues that the language of that section and other provisions of chapter 91A indicates that the legislature sought to provide employees with a means of collecting wages owed them, rather than to bar recovery, when an employer fails to pay compensation in regular intervals.

We agree with plaintiff Audus and believe that section 91A.3(1) was not intended to serve as a statute of limitations. We note that section 91A.10(1), which sets forth the mechanism by which the Iowa labor commissioner addresses complaints by employees against employers for unpaid wages, prohibits the commissioner from accepting complaints for unpaid wages after one year from the date the wages became due and payable. *See* Iowa Code § 91A.10(1). However, it does not preclude recovery of those wages by the employee. *See id.* § 91A.10(3). When read together, sections 91A.3(1) and 91A.10(1) appear to establish only a time frame for the commissioner's involvement in the employee's claim. Section 91A.3(1) places a burden on employers to pay wages, including commissions, at regular intervals. *Id.* § 91A.3(1). Pursuant to section 91A.3(1), if the employer fails to pay commissions in at least twelve-month intervals (and the employer and employee have no written agreement varying that requirement), then the employee may, under section 91A.10, enlist the commissioner to assist in recovering the commissions due.

Section 91A.3(1) places no burden on the employee, and it should not compel a loss by the employee of the employee's wage claim when the employer fails to satisfy the statute's requirements. While any clarification of the rights and duties in employment relationships is beneficial to both employers and employees, we do not believe the legislature intended that the Iowa Wage Payment Collection Law should be used to restrict an employee's wage-collection action or act as a

one-year statute of limitations to bar the employee's wage claim for commissions.

We find no merit to this assignment of error by Sabre.

■ *C. Application of the statute of limitations.* In its ruling on Sabre's motion for reconsideration of its application for separate adjudication of law points, or, alternatively, summary judgment, the district court ruled that the two-year limitations period of Iowa Code section 614.1(8)[1] bars claims for commissions which became due and payable before September 29, 1991, two years before Audus' petition was filed. The parties do not challenge that determination on appeal, nor do they dispute that chapter 91A includes commissions in its definition of wages. *See* Iowa Code §§ 91A.2(7)(a), .3(1).

Defendant Sabre's final argument is that application of section 614.1(8) bars Audus' claim for commissions *earned* before September 29, 1991. Sabre contends the commissions became due and payable, and thus the limitations period began to run, when they were earned. Audus argues that the commissions became due and payable when he requested payment from Sabre. Audus further claims that the parties' commission arrangement was a "continuous, open, current account." *See* Iowa Code § 614.5.

We agree with Audus that section 614.5 is applicable to his breach-of-contract claim. Section 614.5 provides:

> When there is a continuous, open, current account, the cause of action shall be deemed to have accrued on the date of the last item therein, as proved on the trial.

In *Patterson v. Patterson's Estate,* 189 N.W.2d 601, 605 (Iowa 1971), we held that nursing services rendered over a period of three years were part of a continuous account for unpaid wages. Thus, although the two-year limitations period of section 614.1(8) applied to the claim for wages, the statute did not bar any part of the claim. *Patterson,*

---

1. Section 614.1 provides:

    Actions may be brought within the times herein limited, respectively, after their causes accrue, and not afterwards, except when otherwise specially declared:

    . . . .

    8. Wages. Those founded on claims for wages or for a liability or penalty for failure to pay wages, within two years.

    . . . .

Iowa Code § 614.1(8).

189 N.W.2d at 605. *See also Bankers Trust Co. v. Economy Coal Co.*, 224 Iowa 36, 40, 276 N.W. 16, 19 (1937) (noting that deferred salaries were part of continuous accounts); *Wertz v. Ryan*, 192 Iowa 517, 519–20, 184 N.W. 1032, 1033 (1921) (holding that a cause of action for materials furnished and labor performed was based on a continuous, open, current account); *Soderland v. Graeber*, 190 Iowa 765, 776, 180 N.W. 745, 749–50 (1921) (finding that operating farm for five years established continuous account).[2]

In the present case, the jury determined that the payments made by Sabre did not satisfy Sabre's obligation in full. Instead, the commissions accrued continuously over the period of Audus' employment. Payments by Sabre were not allocated to any particular sales transaction, but were based on the accumulated commissions. Such an arrangement can be characterized as a continuous account. Therefore, whether Audus' cause of action accrued when he made his last sale (sometime in 1992) or when he demanded payment of the remaining commissions (at the time he quit his employment in June 1992), all of his claims fall within the two-year limitations period.

The district court did not err in entering judgment for plaintiff for the damages awarded by the jury. Likewise, the court properly overruled Sabre's motion for directed verdict and motion for judgment notwithstanding the verdict that challenged such award and judgment.

**2.** In *Porter v. Chicago, I. & D. Ry.*, 99 Iowa 351, 355, 68 N.W. 724, 725 (1896), this court explained the rationale for tolling the statute of limitations in the case of an open, continuous, current account:

> One of the reasons why the statute of limitations does not commence to run against an open, current, continuous account, is that the obligation of the debtor is to pay the balance which remains after the account is closed, and not each item as it is rendered from day to day, or from month to month. It is the constantly varying balance which is the debt. When the account is closed, by settlement or otherwise, it becomes an account stated, and a new promise, either express or implied, arises to pay the ascertained amount.

We note that the code in force at that time contained a provision identical to Iowa Code § 614.5. *See* Iowa Code § 2531 (1873).

■ *IV. Denial of Audus' application for court costs and attorney fees.* In his cross-appeal, plaintiff Audus contends the trial court erred in denying his post-trial application for attorney fees. A successful party ordinarily cannot recover attorney fees unless they are authorized by statute or agreement. *Maday v. Elview–Stewart Sys. Co.*, 324 N.W.2d 467, 469 (Iowa 1982). Iowa Code section 91A.8 provides for such recovery whether or not the employer's violation of chapter 91A was intentional. Iowa Code § 91A.8.[3] The trial court must assess attorney fees when an employee prevails in a suit brought under chapter 91A and requests such attorney fees. *Maday*, 324 N.W.2d at 470. The court must conduct an evidentiary hearing to determine the amount of fees, unless the parties agree to the contrary. *Id.*

■ The trial court denied Audus' application for attorney fees, reasoning that because Audus had not proved the commissions were due and payable at the end of any twelve-month interval, the jury awarded damages under the breach-of-contract claim but not under the chapter 91A claim.

We believe otherwise. Because, as we decided in division III–B above, section 91A.3 does not act as a twelve-month statute of limitations, there was no need for the jury to consider whether the commissions were due in any twelve-month interval. In submitting the case to the jury, the trial court instructed it to consider such issues as whether Sabre intentionally failed to pay the commissions owed to Audus and the amount of any dam-

**3.** Section 91A.8 provides:

> When it has been shown that an employer has intentionally failed to pay an employee wages or reimburse expenses pursuant to section 91A.3, whether as the result of a wage dispute or otherwise, the employer shall be liable to the employee for any wages or expenses that are so intentionally failed to be paid or reimbursed, plus liquidated damages, court costs and any attorney's fees incurred in recovering the unpaid wages and determined to have been usual and necessary. *In other instances the employer shall be liable only for unpaid wages or expenses, court costs and usual and necessary attorney's fees incurred in recovering the unpaid wages or expenses.* (Emphasis added.)

ages to Audus resulting from such failure. The jury found there was no intentional failure by defendant Sabre to pay commissions. Those issues relate only to a chapter 91A claim. Therefore, the jury considered Audus' chapter 91A claim when it awarded him damages.

Moreover, the language of Iowa Code chapter 91A indicates that Audus is entitled to attorney fees. Section 91A.2(7)(a) defines "wages" as "[l]abor or services rendered by an employee, whether determined on a time, task, piece, *commission,* or other basis of calculation" (emphasis added), and section 91A.3(1) refers to commissions as wages in its directives concerning the methods by which employers must pay wages. Under the last sentence of section 91A.8, an employee is entitled to attorney fees when the employer fails to pay wages pursuant to section 91A.3. Thus, we believe the statute allows plaintiff Audus to recover attorney fees.

We also believe that under the court's instructions, the jury could, and did, base its verdict for plaintiff Audus on both Audus' chapter 91A wage claim and Audus' breach-of-contract claim. Those claims are not mutually exclusive. Such submission should not preclude Audus from recovering attorney fees under section 91A.8.

We reverse on Audus' cross-appeal and remand for hearing to fix costs and attorney fees pursuant to section 91A.8.

V. *Disposition.* We have considered other arguments raised by Sabre on appeal and find them to be without merit. We affirm on defendant Sabre's appeal of the district court's judgment awarding damages to plaintiff Audus. On Audus' cross-appeal, we reverse the court's ruling denying Audus' application for attorney fees and remand the case to the district court for hearing to fix costs and attorney fees incurred by Audus in recovering the unpaid wages.

Costs on appeal are taxed to Sabre.

**AFFIRMED ON APPEAL; REVERSED ON CROSS–APPEAL; AND REMANDED.**